IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RANDY HANSON,

                    Plaintiff,                 OPINION AND ORDER

    v.

                                    07-cv-539-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Because Judge Shabaz will be convalescing from shoulder surgery for an extended period of time, I have assumed administration of the cases previously assigned to him, including this one.

This is an action for judicial review of an adverse decision of the commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Randy Hanson seeks reversal of the commissioner's decision that he is not disabled and therefore ineligible for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382(c)(3)(A). Plaintiff contends that the administrative law judge failed to comply with the remand order of the appeals council, made a flawed assessment of plaintiff's credibility and erred in his

1

consideration of the vocational expert's testimony.  Plaintiff also seeks a sentence six remand for consideration of additional evidence.

I find that the administrative law judge complied with the appeals council's remand order of the October 20, 2003 decision.  I further find that because the administrative law judge built an accurate and logical bridge between the evidence and his conclusion that plaintiff's testimony about his limitations was not credible, his credibility determination was not patently wrong.  I also find that the administrative law judge properly relied on the vocational expert's testimony to find plaintiff not disabled.

For these reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.  I am also denying plaintiff's motion for a sentence six remand because the additional evidence submitted by plaintiff is not material.

The following facts are drawn from the administrative record (AR):

FACTS

A.  Background and Procedural History

Plaintiff was born on October 6, 1959.  He had greater than a high school level education and past relevant work experience as a licensed nurse.  AR 21.  Plaintiff alleges that he is disabled as a result of a back injury, herniated discs at L4-5, C-5, C-6 and C-7

levels, an impinged ulnar nerve at the right elbow, arthritis of the right knee, plantar fasciitis and bilateral hearing loss.

Plaintiff previously filed an application for disability insurance benefits with a protective filing date of March 17, 2000.  On February 6, 2002, administrative law judge Leonard A. Nelson found plaintiff disabled from December 1, 1998 through September 1, 2000.  AR 33-37.  On February 25, 2002, plaintiff requested review by the appeals council, but this request was never addressed.  The commissioner has advised this court that it will now address this request for review on an expedited basis.  Dkt. #22.

On February 27, 2002, plaintiff filed a new application for disability insurance benefits.  On October 20, 2003, administrative law judge Michael D. Quayle found that plaintiff was not disabled from February 27, 2002 through the date of his decision.  AR 43-50.  Plaintiff filed a request for review of this decision on November 13, 2003.  On May 13, 2005, the Appeals Council issued an order stating in the introduction: "The administrative law judge issued a decision on October 20, 2003.  The claimant has asked the appeals council to review this decision."  The Appeals Council then remanded the case to the administrative law judge for resolution of the following issues:

> The hearing decision, page 1, states that the claimant, through counsel, stipulated to a closed period of disability from December 7, 1998 through September 1, 2000.  However, the claimant and representative question the finding of a closed period of disability.

> The Administrative Law Judge does not evaluate all of the claimant's impairments. The hearing decision, page 3, states that there is an indication in the record of a severe mental impairment but finds further analysis of this condition is unnecessary because the claimant has already been found disabled on the basis of his physical impairments.
>
> In addition, the hearing recording cannot be located; therefore, the record is incomplete.

AR 99. The Appeals Council directed the administrative law judge to obtain additional evidence and, if necessary, evidence from a medical expert. The Appeals Council also directed the administrative law judge to evaluate plaintiff's mental impairment, give further consideration to the plaintiff's maximum residual functional capacity and, if warranted, obtain supplemental evidence from a vocational expert. AR 100.

A hearing was held before administrative law judge Roger W. Thomas on November 14, 2005 in Duluth, Minnesota. The administrative law judge heard testimony from plaintiff, who was represented by a lawyer. He also heard testimony from a neutral medical expert and a neutral vocational expert. AR 1457. On December 27, 2005, the administrative law judge issued his decision, finding plaintiff not disabled. AR 20-28. The decision became the final decision of the commissioner when the Appeals Council denied plaintiff's request for review on July 27, 2007. AR 12-14.

B.  <u>Medical Evidence</u>

On September 1, 1998, plaintiff suffered a work related injury to his back.  AR 1471.

Plaintiff was treated by Dr. Stephan Konasiewicz, a spinal specialist, on October 23, 1998.

AR 818.  On December 8, 1998, Konasiewicz performed a lumbar laminectomy on plaintiff.

AR 819.  Plaintiff had physical therapy after his surgery.  AR 819.

On July 20, 2000, plaintiff had a second surgery to remove a fat graft from the

original surgical site.  AR 807.  Because plaintiff continued to have pain, Konasiewicz

performed  an L5-S1 fusion and L4-5 laminectomy on plaintiff on February 26, 2002.  AR

672.  After this surgery, plaintiff had some reduced range of motion but good muscle

strength, no sensory deficits, no muscle weakness or atrophy, no gait abnormalities and no

consistent evidence of significant neurological involvement.  AR 562-63, 650-54, 1086-87,

1131, 1187.  In August 2002, plaintiff requested termination of his physical therapy because

he no longer needed it.  AR 1089.

Plaintiff also was diagnosed with a herniated cervical disc with radiating pain and

finger numbness.  AR 1185.  A nerve conduction study completed in February 2004 showed

no electrodiagnostic evidence of right median or ulnar neuropathy and no electrodiagnostic

evidence of cervical radiculopathy.  AR 1132.  A 2005 magnetic resonance imaging scan

showed plaintiff had a herniated disc at the C5-6 and C6-5 levels.  AR 1195.  A subsequent

nerve conduction study in February 2005 indicated plaintiff had mild ulnar neuropathy at

5

both elbows but no cervical radiculopathy.  AR 1173-74.  Plaintiff had some reduced ranges of upper extremity motion but good motor strength, only intermittent pain and no deficits in gripping or grasping.  AR 1177-78, 1190, 1306.

Plaintiff also had reported problems with his right knee and right heel.  A knee x-ray was essentially normal with mild degenerative changes and no evidence of meniscal tear.  AR 1296.  An x-ray of plaintiff's right heel showed no major abnormality.  After an examination, plaintiff's doctor, Dr. John P. McCue, diagnosed him with plantar fasciitis.  AR 1294. Plaintiff also has a 40% hearing loss and wears bilateral hearing aids.  AR 23.

Dr. Patrick Healy completed independent medical evaluations of plaintiff as the paid medical consultant for the worker's compensation insurer for plaintiff's employer.  He completed his first report on April 29, 1999 and recommended a work hardening program. AR 824.  After examining plaintiff on August 29, 2001, Healy concluded that plaintiff had failed lumbar spine surgery and a herniated cervical disc.  AR 811.  On November 7, 2002, Healy concluded after examining plaintiff, that he was progressing normally and functioning at sedentary level.  AR 671.  On October 15, 2003, Healy noted that plaintiff's cervical examination was unchanged with a normal range of motion, no localized weakness, normal reflexes and no sensory change.  He also noted that plaintiff was status post laminectomy times three with L5-S1 fusion and L4-5 laminectomy with chronic low back pain.  AR 1309.

C.  Consulting Physicians

On June 11, 2002, a state agency physician completed a Residual Physical Functional Capacity Assessment for plaintiff, finding that because plaintiff had degenerative disc disease and lumbar spinal fusion, he could lift ten pounds frequently and 20 pounds occasionally, could stand or walk six hours and sit six hours in an eight-hour work day and could occasionally stoop.  AR 683-689.  This assessment was affirmed by a disability examiner on November 21, 2002 and by a medical consultant on December 4, 2002.  AR 689.

On August 5, 2004, Michael J. Mandli, a state agency consulting psychologist, completed a psychiatric review technique form for plaintiff.  AR 1139.  He concluded that plaintiff had depression but that it did not restrict his functioning.  He also found that there was no evidence of "C" criteria for any affective disorder.  AR 1149-1150.

An August 9, 2004 physical residual functional capacity assessment completed for plaintiff by a state agency physician indicates that because of plaintiff's post status fusion and laminectomy he could occasionally lift ten pounds and frequently lift less than ten pounds; stand or walk for six hours and sit for six hours in an eight-hour work day; not climb ladders, ropes or scaffolds; occasionally climb stairs, stoop and crouch; and not kneel or crawl.  AR 1153-1159.

On August 24, 2004, a second physical residual functional capacity assessment was completed for plaintiff by a state agency physician.  Because of plaintiff's diagnoses of

7

lumbar stenosis and cervical disc herniation, the physician found that plaintiff could occasionally lift ten pounds, frequently lift less than ten pounds and stand or walk two hours and sit six hours in an eight-hour work day with no other limitations.  AR 1161-1167.

### D.  Hearing Testimony

At the beginning of the hearing, the administrative law judge summarized the exhibits in the record.  AR 1460.  He then discussed the procedural history of plaintiff's applications for benefits.  AR 1461.  The administrative law judge asked plaintiff whether he had previously stipulated to a closed period of disability from 1998 to 2000.  AR 1463.  Plaintiff admitted that he had.  AR 1464.

Plaintiff testified that he had obtained certification as a licensed practical nurse.  AR 1466.  He also testified that he had continuing chronic low back pain, arthritis in his right knee and plantar fasciitis in his right foot that prevents him from walking very far.  AR 1467.  He also testified that he could stand about 20 minutes.  AR 1468.  Plaintiff described his worst problem as pain in his lower back.  AR 1473.  Plaintiff testified that he rotated three different types of narcotic pain medications with an anti-inflammatory medication for his pain.  AR 1474.  He takes this medication in the morning, and his pain is better in the morning than at night.  AR 1475.  Plaintiff also testified that he had cervical herniation which causes him pain and that his range of neck motion was reduced.  AR 1478-1479.

In response to the administrative law judge's questions about his depression, plaintiff testified that he lacked ability to move around and do things. AR 1476. Plaintiff testified that he had tried counseling and took medication but had never been hospitalized for psychiatric reasons. AR 1477.

Plaintiff testified that he had no problems driving. AR 1466. He further testified that he did light chores around the house, including helping with laundry and grocery shopping. AR 1480.

Plaintiff's attorney asked him about his hearing loss. Plaintiff testified that he wore two hearing aids but still has some tone deafness. AR 1481. Plaintiff also testified that he could not hold his neck in a static position for longer than 20 minutes. AR 1482. Plaintiff described having trouble bending and stooping. AR 1483.

The administrative law judge called Dr. Julianne Koski to testify as a neutral medical expert. She testified that plaintiff had chronic low back pain caused by degenerative disc disease, chronic neck pain, a history of depression, a history of sleep apnea, gastroesophageal reflux disease, high cholesterol, hearing loss, plantar fasciitis and right knee pain. AR 1484. Koski testified that plaintiff's back and neck pain did not meet a listed impairment because the motor and neurological requirements were not met. She also testified that plaintiff's depression did not meet the requirements of Listing 12.04 for affective disorder. AR 1485. Koski testified that plaintiff could not lift above shoulder level but could lift 20 pounds

occasionally and ten pounds frequently. She also testified that plaintiff should avoid repetitive neck rotation and lateral bending and could not hold his neck in a static position for longer than 30 minutes. AR 1485, 1489. She testified that plaintiff was precluded from repetitive twisting and bending at the waist and climbing ladders, scaffolds and ropes but could occasionally climb stairs. Plaintiff could rarely kneel, crouch, or crawl. She concluded that plaintiff could stand or walk for two hours and sit for six hours in an eight-hour work day with an opportunity to change positions every 30 minutes. AR 1486. Koski noted that plaintiff should not work in a significantly loud environment.

Kenneth Ogren testified as a neutral vocational expert. AR 1492. The administrative law judge asked Ogren hypothetically whether an individual with plaintiff's age, education and work experience who could perform work involving occasional lifting of up to 20 pounds, frequent lifting of up to ten pounds, standing or walking for two hours in an eight hour work day and sitting for six hours in an eight hour workday with a 30 minute sit and stand option and work involving no over shoulder lifting; no repetitive neck rotation (no static position of the neck); no "representative" lateral bending of the neck; no repetitive bending or twisting at the waist; no climbing ladders, scaffolds or ropes; only occasional climbing of stairs; rare kneeling, crouching, crawling or stooping; and no work in an environment with a noise level over 90 decibels could perform plaintiff's past relevant work as a licensed practical nurse. Ogren testified that such an individual could not perform

10

plaintiff's past work which he would classify as requiring heavy work.  AR 1493.  Ogren also testified that plaintiff could work in skilled or semi-skilled occupations as a companion to the elderly (Dictionary of Occupational Titles 309.677-010), a referral and information aid (237.367-042) and information clerk (237.367-022).  AR 1494.  Ogren testified that plaintiff could perform unskilled jobs, including inspector (685.687-014) and deburrer (700.687-058).  AR 1495.  The administrative law judge asked Ogren, "Is your testimony consistent with the DOT?"  Ogren responded, "Yes, your honor."

## F.  The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  20 C.F.R. § 404.1520.  At step one he found that plaintiff had not engaged in substantial gainful activity since February 7, 2002. At step two, the administrative law judge found that plaintiff had severe impairments of degenerative disc disease of the cervical and lumbar spine, right knee arthritis, right plantar fasciitis and a bilateral hearing loss.  The administrative law judge also noted that plaintiff had been diagnosed with depression, sleep apnea, gastroesophageal reflux disease and high cholesterol but that they were not severe impairments. The administrative law judge found that  plaintiff's depression had not resulted in more than mild limitations in activities of daily living, social functioning, concentration, persistence or pace with no episodes of

11

decompensation of extended duration.  He stated that the records confirmed that plaintiff adequately cared for himself with some limitations (secondary to his physical but not mental symptoms), interacted appropriately and had not reported difficulties with concentration or focus.  The administrative law judge further noted that there was no evidence of plaintiff's need for psychiatric hospitalizations, crisis center interventions or ongoing psychological counseling.  He concluded that plaintiff's impairments of sleep apnea, gastroesophageal reflux disease and high cholesterol have been controlled with medications with no resulting functional limitations.  AR 21-22.

Relying on the opinion of Koski, the neutral medical expert, the administrative law judge found at step three that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  AR 43.

At step four, the administrative law judge relied on Koski's testimony and determined that plaintiff retained the residual functional capacity to perform work involving occasionally lifting up to 20 pounds, frequently lifting up to ten pounds, standing or walking for two hours in an eight hour work day, sitting for six hours in an eight-hour workday with a 30 minute sit and stand option and work involving no over shoulder lifting; no repetitive neck rotation (no static position of the neck); no repetitive lateral bending of the neck; no repetitive bending or twisting at the waist; no climbing ladders, scaffolds or ropes; only

12

occasional climbing of stairs; rare kneeling, crouching, crawling or stooping; and no work in an environment with a noise level over 90 decibels.

In determining plaintiff's residual functional capacity, the administrative law judge stated:

> In reaching this assessment of the claimant's residual functional capacity the undersigned has accorded the claimant the benefit of all doubt in imposing exertional and non-exertional limitations in the workplace. However, the undersigned cannot find the claimant credible that he is incapable of all work activity as a result of his impairments, because of significant inconsistencies in the record as a whole.

AR 22. In making this credibility determination, the administrative law judge noted that the objective medical evidence and plaintiff's course of treatment since February 7, 2002 were not consistent with the severity of his allegations. He further noted that plaintiff's pain had been treated with extensive physical therapy and the use of pain medication with reported improvement. Specifically, the administrative law judge mentioned that in August 2002, plaintiff had requested termination of physical therapy because he was feeling so well. AR 23. The administrative law judge elaborated as follows:

> The claimant continues to allege chronic pain but treatment records and testimony confirm a stabilization of symptoms, including pain with the use of medications with no significant reports of side effects or requests for medication changes. As a result the undersigned finds the claimant has the ability to

13

utilize prescriptive medication and treatment options, such as physical therapy, to reduce the severity of his symptoms and functional limitations.

The administrative law judge also discussed plaintiff's activities of daily living as described in plaintiff's testimony and statements in the file.  The administrative law judge found that plaintiff's daily activities, including light housework, driving and using a snow blower, were consistent with the ability to perform work activity within the assessed residual functional capacity.  In addition, the administrative law judge found that the record does not demonstrate that plaintiff has a strong motivation to return to the workplace.  AR 24.

At step five, the administrative law judge found that plaintiff was not able to perform his past work as a licensed practical nurse but that he could perform a significant number of other jobs in the economy, namely companion for the elderly, referral and information aid, information clerk, inspector and deburrer.  In reaching this conclusion, the judge relied on the testimony of the vocational expert, finding it to be consistent with the Dictionary of Occupational Titles.  AR 26.

G. Additional Evidence

On August 18, 2006, plaintiff submitted to the appeals council a residual functional capacity form completed for him by Dr. John McCue.  McCue found that plaintiff could stand or walk less than two hours and sit about four hours in an eight-hour work day, could

14

only occasionally lift less than ten pounds and could not bend.  AR 1388-1394.  Plaintiff also submitted Mc Cue's records from October 12, 2005 to April 13, 2006 and medical records from St. Luke's Medicine and Rehabilitation dated July 3, 2006.  AR 1354-1387.

On December 18, 2006, plaintiff submitted to the Appeals Council a vocational evaluation report completed at the Stout Vocational Rehabilitation Institute after a five-day evaluation.  AR 1395-1403.  Kara James, who evaluated plaintiff, concluded that plaintiff could not work because of his extensive physical limitations.

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach

15

different conclusions about a claimant's disability, the responsibility for that decision falls on the commissioner.   Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993). Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review," Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).


### B. Remand Order

As an initial matter, I note that plaintiff contends that the May 13, 2004 order of the Appeals Council remanded both the February 6, 2002 decision and the October 23, 2003 decision.  He is mistaken.  The remand decision states as follows: "The administrative law judge issued a decision on October 20, 2003.  The claimant has asked the appeals council to review this decision."  The remand order could not have remanded the February 6, 2002 decision because the Appeals Council has not yet decided plaintiff's request for review of that decision.  Dkt. #22 (defendant's notice to court of this fact).

Plaintiff argues that the administrative law judge failed to comply with the remand order in two respects.  One of the issues that the appeals council wanted considered on

16

remand was administrative law judge Quayle's statement that the February 6, 2002 decision was consistent with the plaintiff's stipulation to a closed period of disability.   AR 43. Administrative law judge Thomas specifically asked plaintiff at the hearing on remand if he had stipulated to the closed period of disability, and plaintiff admitted that he had.

The remand order also directed the administrative law judge to assess plaintiff's mental impairment.  Administrative law judge Thomas specifically asked  plaintiff about his depression.  Plaintiff responded that he had tried counseling and taken medication.  The administrative law judge also asked the medical expert about plaintiff's impairments.  The expert testified that plaintiff's depression did not meet the requirements of Listing 12.04, Affective Disorder.   Her opinion was consistent with that of a state agency consulting psychologist, who found on August 5, 2004 that plaintiff's depression did not restrict his functioning and that there was no evidence of his meeting the "C" criteria for any affective disorder.  The administrative law judge then found pursuant to 20 C.F.R. § 404.1520a that the plaintiff's depression had not resulted in more than mild limitations in activities of daily living; social functioning; or concentration, persistence or pace with no episodes of decompensation of extended duration.   The administrative law judge concluded that plaintiff's depression was not a severe impairment.  Plaintiff does not cite specific medical evidence that the administrative law judge failed to consider or point to flaws in his application of the regulation.

17

C. <u>Credibility Finding</u>

Plaintiff challenges the administrative law judge's determination that plaintiff's statements concerning his inability to work were not entirely credible.  An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility. <u>Shramek v. Apfel</u>, 226 F.3d 809, 812 (7th Cir. 2000).  In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  <u>Prochaska v. Barnhart</u>, 454 F.3d 731, 738 (7th Cir. 2006); <u>Sims v. Barnhart</u>, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result. <u>Shramek</u>, 226 F.3d at 811.  The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record.  <u>Skarbeck v. Barnhart</u>, 390 F. 3d 500, 505 (7th Cir. 2004).

Plaintiff argues that the administrative law judge's credibility finding is hopelessly flawed because he did not consider the specific factors required by Social Security Ruling 96-7-p.  These factors include the objective medical evidence; plaintiff's daily activities; precipitating or aggravating factors; type, dosage and effectiveness of medication; treatment other than medication; any measures to alleviate pain; and functional limitations and

restrictions.   The administrative law judge addressed all of these factors.   Plaintiff correctly points out that the administrative law judge did not specifically address the amount of narcotic pain medication that plaintiff took for his pain or how the medications might affect his ability to concentrate and to attend work.   However, the administrative law judge discussed plaintiff's use of medications and found no significant reports of side effects or requests for medication changes.   He also found that plaintiff had the ability to use prescriptive medication and treatment options, including physical therapy, to reduce the severity of his symptoms and functional limitations.   I can infer from this discussion that the administrative law judge considered plaintiff's medications and their side-effects.   My review of the record also revealed that plaintiff's medications allowed him to concentrate or attend work.

       The administrative law judge gave good reasons for finding plaintiff not credible. Although plaintiff testified that he had continuing low back pain, the administrative law judge found that the evidence showed his pain had improved with medications and physical therapy.   For instance, in August 2002, plaintiff had terminated physical therapy because he no longer needed it.   Plaintiff also was able to drive, use a snow blower and do light household chores, including helping with laundry and grocery shopping, even though he had some pain.   The administrative law judge found these activities to be consistent with the

ability to perform work activity within the assessed residual functional capacity.  Because the credibility finding is not patently wrong, I must affirm it.

### D. Vocational Expert Testimony

Plaintiff asserts that the hypothetical question that the administrative law judge asked the vocational expert did not contain all of his limitations.  Plaintiff argues that the administrative law judge omitted the limitations assessed by the medical expert of no repetitive neck rotation, no repetitive lateral bending of the neck and no static position of the neck.  However, the administrative law judge's hypothetical question specifically contained the limitations of no repetitive neck rotation, no representative lateral neck bending and no static position of the neck for more than 30 minutes.  The transcript of the hearing indicates that the administrative law judge said "representative" lateral neck bending rather than "repetitive lateral neck bending."  However, the vocational expert was present during the administrative law judge's finding of plaintiff's residual functional capacity and Koski's testimony.  It is certainly reasonable to infer that the vocational expert understood that plaintiff was limited to no repetitive lateral bending of the neck.  As the commissioner points out, the word "representative" was likely a transcription error.

Plaintiff also argues that the positions identified by the vocational expert and adopted by the administrative law judge as work he was able to perform would require some neck

bending and maintaining his neck in a static position.   Because no one questioned the expert's reasoning, the administrative law judge is entitled to accept that conclusion even if it differs from the <u>Dictionary</u>.  <u>Donahue v. Barnhart</u>, 279 F. 3d 441, 446 (7th Cir. 2002).  It was reasonable for the administrative law judge to rely upon the uncontradicted testimony of the vocational expert given the hypothetical was an accurate representation of plaintiff's limitations.

Next, plaintiff asserts that the administrative law judge committed reversible error by not inquiring whether there were discrepancies between the vocational expert's testimony and the <u>Dictionary of Occupational Titles</u>.  <u>Prochaska v. Barnhart</u>, 454 F.3d 731, 735 (7th Cir. 2006)(administrative law judge who takes testimony from vocational expert about job requirements must determine whether that testimony is consistent with <u>Dictionary</u>). However, plaintiff is incorrect.  Ogren testified in response to the administrative law judge's question that his testimony was consistent with the <u>Dictionary of Occupational Titles</u>.  AR 1495.  Ogren also provided <u>Dictionary of Occupational Title</u> numbers for the various jobs he identified.   The administrative law judge then stated in his decision that Ogren's testimony was consistent with the <u>Dictionary</u>.  Accordingly, the administrative law judge met his burden.

E. <u>Sentence Six Remand</u>

Plaintiff requests a remand under sentence six of § 405(g) for consideration of evidence he submitted to the Appeals Council, including, a August 18, 2006 residual functional capacity form completed by McCue, additional medical records and a November 15, 2006 vocational evaluation report. To be entitled to a remand under sentence six of § 405(g), plaintiff must show that "there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Putting aside the issues of newness and good cause, plaintiff is not entitled to a remand under this provision because the additional evidence he has submitted is not material. Evidence is "material" if it gives rise to a "reasonable probability" that the commissioner would have reached a different conclusion had the evidence been considered. <u>Perkins v. Chater</u>, 107 F.3d 1290, 1296 (7th Cir. 1997). To be material, new evidence must relate to the claimant's condition "during the relevant time period encompassed by the disability application under review." <u>Kapusta v. Sullivan</u>, 900 F.2d 94, 97 (7th Cir. 1990).

The 2006 vocational evaluation report was completed one year after the administrative law judge found plaintiff not disabled and does not pertain to plaintiff's condition during the relevant time period (February 7, 2002 through December 31, 2005). AR 26. Mc Cue's report and the additional medical records also pertain to a period outside the relevant time period.

22

In sum, because there is no reasonable probability that the administrative law judge would have reached a different decision had he considered the additional evidence, plaintiff's motion for a sentence six remand will be denied.


ORDER

IT IS ORDERED that plaintiff Randy Hanson's motion for a sentence six remand is DENIED.  IT IS FURTHER ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff's appeal is DISMISSED.  The clerk of court is directed to enter judgment and close this case.

Entered this 23rd day of April, 2008.

BY THE COURT:


/s/
_____
BARBARA B. CRABB
District Judge

23